Mr. Bondurant, are you ready when you are, sir? Good morning, Your Honors. May it please the Court. In this case, the plaintiff appellants, Jeff Baron and two of the entities in which Mr. Baron holds an interest You've got to clear your throat and speak up just a little bit. I know you've been waiting for a while. Yes, sir. Sorry about that. I do tend to mumble a bit. Give us a little more of your theater voice. I will. I'll try to project a little better. I apologize. Have you been paid your fee in advance? Yes, sir. I sure did. I made sure that that happened, certainly. Yes, so in this case, Mr. Baron and two of the entities in which Mr. Baron holds an interest, which is Novo Point and Quantec, filed a lawsuit against Mr. Vogel and the firm that Mr. Vogel works for, which is the Gardeer Law Firm. The district court dismissed the case on the basis that it found Mr. Vogel was entitled to quasi-judicial immunity, and because we contend that that ruling was in error, we urge the court to reverse that order and remand the case for further proceedings. Of course, this court, as Your Honor's comments made clear a moment ago, has already had some involvement with this case, and it's been here a couple times before, so I'll go through the facts sort of summarily, unless the court would prefer that I get straight to the arguments. But in essence, this case had its genesis when Netsphere and Ondova entered into a business agreement. Ondova was also one of Mr. Baron's entities. That did not work out, and litigation ensued, and Ondova was ultimately put into bankruptcy, where Mr. Sherman was appointed trustee, and, of course, Mr. Sherman is alleged to be one of Mr. Vogel's co-conspirators in this case. Mr. Vogel was actually appointed special master in the district court case there and then served as mediator of the dispute. That process resulted in the global settlement agreement, pursuant to which Mr. Baron made a payment of roughly $2 million, and the primary consideration that Mr. Baron was supposed to receive from that was dismissal of the cases and sort of a fresh start, and that didn't happen. What happened is once the money was paid and the funds were on account, the amended complaint alleges that there was effectively a conspiracy at that point to loot and pilfer the available assets. And so the dismissals were not filed. The creditors were not paid, as they easily could have been at that time, and as part of the scheme to loot, the amended complaint alleges that Vogel and his co-conspirators intentionally made numerous material misrepresentations to the court, and this court already found in net sphere one that many of the allegations that they were making were without one shred of evidentiary support. So we have those. There's also allegations that the defendants slandered and disparaged Mr. Baron's reputation, that they bribed employees of NovoPoint and Quantech to switch their allegiances to work in ways that favored Vogel and his co-conspirators over Mr. Baron and to Mr. Baron's detriment, and there's further claims that the receiver and trustee attempted to manufacture and fabricate work just to justify more billing, that they overbilled and engaged in billing abuses, and that is to some extent supported even by the 2013 fee order that the defendants themselves attempt to rely on in various numerous other respects, and that is block quoted in our reply brief, the relevant aspect of that. So in essence, that's what the case is about. Those are the overarching categories of the allegations that we find in terms of the conduct that the defendants are alleged to have engaged in, and to date, you know, it worked. There was roughly a little over $2 million in the receivership at the time the payment was made. Unsecured claims were about $800,000. So once you add in administrative claims, if an administrative bar date had been set and the available assets applied to creditor claims, then the bankruptcy probably should have closed with about a million dollars left in it to function the ongoing operations of the reorganized ONDOVA once it came out. Now, those are the allegations, and those are all presumed true, of course, at this point. We're at the pleading stage, so all of that is presumed true. But far from that happening, as this court is aware from the prior case, part of what happened was Vogel and Sherman set about to try to exercise, have the court exercise jurisdiction over assets that the district court didn't have jurisdiction over. Those were the personal assets of Mr. Barron himself as well as the assets of Novo Point and Quantec, and that was the point of the first appeal, Net Sphere 1, where the issue was, you know, was that receivership order proper in this court held? That it wasn't. Well, in the meantime, you know, because of all the conspiracy, the lewd, and the manufacturing, and the making false representations to the court, et cetera, the ONDOVA bankruptcy estate is now effectively insolvent. The defendants have managed to blow through over $5 million in a case that had $800,000 in unsecured claims. So those are the allegations, and that's where we're at. And as I mentioned earlier, the district court dismissed the case primarily on the basis that the case was barred by quasi-judicial immunity. And we contend that that was a plainly erroneous holding. I mean, the law on the judicial immunity or the immunity afforded to receivers is set forth in this court's Davis v. Bayless case, and two of the criteria that have to be met, the receiver has to be acting in good faith within the scope of the authority that was granted to him by the order, and that's plainly not true on these pleadings. These pleadings allege nefarious conduct, to say the very least, that was taken in bad faith in order to waste what was available, to pilfer the assets. And so on that basis alone, without going much further than that, I think that's adequate standing alone to demonstrate that the court erred in that regard. I mean, again, there's allegations of slander and disparagement. There's allegations of bribery. There's allegations of lying and pilfering corporate assets, and none of that falls within the scope of immunity, nor could it. What do you say in this case about the fact that, about the Barton doctrine? You didn't seek leave from the court that appointed. That's correct, Judge King. So there are two answers. One is that the case was removed to district court, and the Carroll v. Abide case in this court from, I believe it was 2015, it's cited in our reply brief, the order that's at issue is a receivership order from the district court, the same district court that the case was removed to. So once the case was removed, it was effectively pending in the same court that issued the order in question. And what this court said in Carroll v. Abide, under a very similar situation, I don't think it involved removal, but the case there was pending in the same district court, this court held that there was no need to get leave of court from the bankruptcy court to pursue that case in district court because it was the same court where the order had been issued and had been pending. So that's the first argument, is I believe that removal cured whatever Barton doctrine issue there may have been. I think secondly, we've got the operating the business exception, the 959 exception, and there are numerous allegations in the complaint of mismanagement of the company. One of the things that the receivership order did was it gave Mr. Vogel, it appointed him to run the businesses, the Noble Point and Quantex businesses, and they did that.  But the allegations of the complaint, I believe it's paragraph 61, chronicles they didn't pay renewal fees on domain names, for example, that were allowed to lapse, very valuable domain names. There were probably 500-plus trademark disputes that either weren't prosecuted or properly defended. The taxes, I don't believe, were handled correctly. So at any rate, there's numerous allegations that I think would bring it within the operating the business exception to the Barton doctrine. So I think that's the answer to the Barton doctrine. And so with that, getting back briefly to the immunity doctrine, we relied in our brief and continue to rely on the New Alaska case from the Ninth Circuit, and that's the case actually that this court relied on in Davis v. Bayless when it set forth the standard for immunity. And what happened in New Alaska essentially was a similar situation. A receiver was sued for allegedly pilfering assets and committing slander, two of the same things that are alleged in this case, and the district court there dismissed the case on immunity, and the Ninth Circuit said, No, we don't think so. There's no immunity for pilfering assets and slander. Those are not judicial functions. That's not the kind of thing that courts authorize when they enter these orders, nor could they. And so, therefore, we reverse as to immunity now. I think the court went on to affirm the dismissal on other grounds. But at least with respect to immunity, the discussion is directly on point and I think apropos, which is there is no immunity for these types of allegations. It's readily established, again, first by the articulation of this court in Davis v. Bayless of how the facts that have to be pled. And, again, we're at the pleading stage, and I'm fairly comfortable that enough is pled to get beyond good faith and within the scope of an order. So there's that, and then again the New Alaska case. And so if the court has no questions about immunity, I do want to just briefly address one other issue, which is the collateral estoppel issue. First and foremost, I think that the court committed a clear abuse of discretion in its statement about collateral estoppel anyway because there's only a single statement that says, almost as an afterthought, oh, by the way, it's barred by collateral estoppel. Now, under this court's case in Lloyds Register, that's just an absolute abuse of discretion. The district court cannot do that. It has to issue an explanation for its ruling. And what this court said in Lloyds Register was even if the court indicates its familiarity with the filings of the parties, that's not enough. The explanation has to be, quote, generated by the court so that no one is left to guess what the court meant. So I think it was an abuse of discretion at any rate. And then quickly, there are two basic, I guess, categories of procedural history here that the defendants rely on in collateral estoppel. One is they rely on some statements that this court made in Net Sphere 1 that were favorable to Mr. Vogel in terms of his performance. And we would submit that those statements cannot form the basis of an issue of preclusion defense for several reasons, the first of which is, obviously, this court doesn't resolve disputed factual issues, nor can it. I mean, there is a dispute about the performance, whether it was in good faith, whether it's entitled to immunity. And so, you know, there's case law from this court and from the U.S. Supreme Court that appellate courts obviously can't resolve disputed issues of fact. So anything that was said in Net Sphere 1 would obviously be controlling within the context of that case and would be part of the mandate going back for purposes of implementing it. But in terms of a long-term preclusive effect, I don't think that on that basis alone there can be preclusion. And another reason, probably the reason this court doesn't make factual findings, the issue was never litigated. There was no litigation in this court over the extent of Mr. Vogel's alleged malfeasance. So that's another reason that collateral estoppel we don't think can apply. And, in fact, if you read the way this court couched its holding, it said on this record we find that there was no bad intent or malicious intent. And, of course, we're not limited to that record anymore. We're trying to expand the record and issue and get more evidence in that can be considered for purposes of making the determination. And then, finally, with respect to the fee orders, there's some statements in there that are relied on. Again, just a few comments. Those aren't final orders. This court has said so twice. And in this circuit, at least, the requirement of finality is identical for both race judicata and collateral estoppel. And I know that the defendants have abandoned their race judicata argument expressly in their opposition because they said they weren't final orders. Well, if that's true, which I think it is, then I think it will not serve as a basis for collateral estoppel either. I'd also note that there was no full and fair opportunity for Mr. Barron to litigate these issues with respect to the fee orders. With respect to the 2015 order, he had eight days to respond to the application. I think it was later. Excuse me, that was 2013. I think it was later expanded a little bit to account for mediation. But then he had seven days to respond, file pleadings, to the 2015 order. And, you know, there were 16,000 pages of applications. There's an excess of $5 million. There was no discovery in those seven days. He wasn't represented by counsel, which was denied by Mr. Vogel himself as receiver, denied his request for counsel. No discovery, no hearing. The applications themselves weren't even evidenced. They weren't verified. There was no full and fair opportunity to litigate this issue with respect to the fee applications. These arguments are set out more fully in our briefs, and I would refer the court to those, and I see that I'm out of time if the court has no questions. All right. Thank you, sir. You've reserved your rebuttal time. All right. May it please the Court. Thank you, Your Honor. George Kreider, Vincent and Elkins, representing the appellees, Peter Vogel, who was the receiver, and his law firm, Gardeer Wynn Sewell. Respectfully, the judgment below should be affirmed. This is at least the fourth trip to this court. I know the members of this panel were not on the prior three, but this is at least the fourth trip to this court, not counting motions for rehearing and reconsideration. Barron is trying to re-litigate, once again, matters this court and the district court already have determined. First of all, the district court properly dismissed this case because the receiver and his law firm have derived judicial immunity as court officers. Now, in the trial court, originally, they tried to argue that Judge Ferguson didn't have jurisdiction or immunity. They abandoned that argument here. They've abandoned that argument in the Court of Appeals. It is clear that Judge Ferguson had jurisdiction. When the Netsphere 1 case first came before this court, what the court found was Judge Ferguson had jurisdiction. He just used the wrong remedy. The Fifth Circuit panel said he could have held Barron in contempt. There could have been a Rule 11 motion for sanctions. He had jurisdiction to take a vexatious litigant and bring him to task, but instead, this court found that he used the wrong remedy, and he ordered my client, Mr. Vogel and his law firm, to implement that receivership. This court has found, and the district court has found, that Mr. Vogel operated fully in accordance with the mandate of the Fifth Circuit and of the district court. He followed a remedy that this court said the trial judge should not have imposed. He has immunity for those actions. Judge King, you asked about the Barton Doctrine. You're absolutely correct. They did not seek leave of court. That should be dispositive. But also, critically here, they waived any argument about Barton. They didn't raise it on appeal. And in their reply brief at page 7, they admit they overlooked it. I mean, it's there. They didn't read it in the opinion. They said that it was oversight and neglect. Well, oversight and neglect in failing to raise the Barton Doctrine issue on appeal is not an excuse. They have waived the Barton Doctrine. They also haven't touched the fact that release, the appellant's brief, fails to challenge the fact there was a court-ordered release for any conduct by the receiver defendants that did not amount to gross negligence that bars all of their claims. In NetSphere 3, the panel of this court specifically found that they were affirming a whole series of orders. Each of those orders has a consequence. Those orders related to fee applications for fees, which the appellants challenged on grounds of fraud, gross negligence, malice, and wrongful purpose. So the panel affirmed findings by the district court, which negates any finding of gross negligence on principles of collateral estoppel, and it makes any concept of gross negligence implausible under Twombly and Iqbal. Gross negligence, as we've noted in our brief, requires a finding of conscious indifference, which is negated by the district court's finding that the receiver acted in good faith and an abundance of care. Panels of this court have affirmed those findings. We note in our brief at page 18, this court held there was, quote, no malice nor wrongful purpose in creating the receivership. The 2013 fee order expressly held that the receiver's work was, quote, exemplary and entirely appropriate, inconsistent with any finding of bad faith or gross negligence. This court affirmed the finding that the work was performed, quote, in good faith, in an abundance of care. The court also found, quote, there was no malice or collusion and no intent to cause harm to Mr. Barron. That's quoted at page 19 of our brief. Those were in the 2013 fee orders this court affirmed in Netsphere 3. Likewise, when this court in Netsphere 3 looked at the 2015 fee order, the district court had confirmed that the receiver complied with the orders of the court. The court also concluded the receivership was operated and concluded in keeping with the mandate of the Fifth Circuit and prior orders of the district and bankruptcy court. So we have a district court directive, a Fifth Circuit mandate, the receiver and his law firm at all times complied. Now, all of these fee orders, the 2013 fee order, the 2015 fee order, and 26 other orders were all affirmed by this court in Netsphere 3. Mr. Barron made the same arguments you've just heard then. They made arguments about looting, about overbilling, about pilfering, about unnecessary fees. What happened was the district court did not grant all the fees that the receiver wanted. What the district court ended up doing was reviewing the fees and making findings consistent with Johnson versus Georgia Highway about the reasonableness of the fees and the performance of the receiver. So they have already litigated and lost issues about the very conduct, the very fees that they're now raising. And while these orders came to the court in an unusual procedural posture, by the time it got here on Netsphere 3, it was the third trip to this court, this court found that under the collateral order doctrine, it could consider these as final orders. It did enter and affirm that there were final judgments. So they were not interlocutory. And one of the reasons is, Your Honor, when other panels of this court have already adjudicated the same facts and the same claims, courts may take judicial notice of the record in the prior proceedings and draw reasonable inferences. That knocks out their claims under Twombly, under Iqbal. It knocks out claims under collateral estoppel. Now, the statement sometimes – sorry, Your Honor. Let me ask a question, sort of basic, and I probably ought to know the answer. Is this the end of this? It should be, Your Honor, yes, because the receivership, the court discharged the receiver and released the receiver. And the receiver has been released for everything other than a claim for gross negligence. And because of judicial immunity, which we believe we have established, because of the Barton Doctrine, which we believe we have established, each of which are independent grounds for affirmance, because of collateral estoppel, because of the waiver of their briefing on these issues, we believe there are multiple grounds to support affirmance. And let me say on collateral estoppel, that's yet another area in which Mr. Barron waived any argument. In the trial court, we moved to dismiss on basis of collateral estoppel. They failed to raise any argument on collateral estoppel, and instead, more than a month after the briefing had closed, they filed, without leave, a 39-page surreply that the district court struck. So there are multiple reasons here, Your Honor, why this case is over. The court can have confidence based upon the three prior panels, the findings of the district court, and the briefing before the court now, that there are ample bases for affirmance. Finally, they make some arguments that appellants can never waive any argument. That's what they say in their reply. They say they could never waive an argument if the appellee points it out on appeal, because then they get to revive their waived argument in their reply. That's not the law. That's what they're trying to do. What's really happening here is that Barron is trotting out before this fourth panel the same arguments, the same claims that were disposed of with respect to the fee orders that are disposed of by the prior findings of the district court and of other panels of this court. And so for these reasons, Your Honor, we would respectfully urge that the judgment below be affirmed. It's time to put a close to all this litigation by Mr. Barron, who the district court and this court found to be a vexatious litigant. If this court affirms this, this litigation is over. It should be over, and it needs to be. Thank you. All right. Thank you, sir. Any rebuttal? Mr. Vonderbrandt. Thank you, Your Honor. Just a couple points briefly with respect to waiver on the Barton Doctrine. It's true. When I wrote the brief, the Barton Doctrine, as I pointed out in my reply, is a footnote to the conclusion, and I did when I wrote the brief, I did. I overlooked it. There was a separate section of the order that purported to put out alternative findings like collateral estoppel, like attorney immunity, and for some reason that I'm unaware of, the court stuck that in a footnote, the Barton Doctrine, in a single sentence, which again under Lloyd's Register is a clear abuse of discretion anyway because there's no explanation for it. But more importantly, what counsel neglected to mention is there are no less than five published opinions from this court, and many of which are fairly recent, that say when the point of the waiver doctrine is to prevent the appellant from effectively surprising the appellee by raising new issues in their reply brief, but this court has very clearly said when the appellee has had his opportunity to brief the merits, there is no surprise and no prejudice, and therefore the waiver doctrine does not apply. I spent no less than five pages in my reply extensively discussing and chronicling that case law. There is no waiver of the Barton Doctrine here, so that is totally without merit. I also would note that counsel mentioned a potential waiver of collateral estoppel in the trial court. He said no argument was put forth. That's not entirely true. The response to the motion to dismiss what it initially said was that collateral estoppel couldn't be decided at the 12B6 stage. It needed to wait until later. Now, there was the surreply that Mr. Crider mentioned was subsequently submitted addressing the merits. That's true. But the point I think that I would make and that I made in my reply brief is the court ruled on it. The court at least purported to rule on collateral estoppel and didn't base its ruling on waiver. And in this court, Mr. Crider, as the appellee, continues to press collateral estoppel as an alternative sustaining ground on the merits with respect to the order. Now, the appellee surely cannot press the merits of an alternative sustaining ground and then tie the appellant's hand and say the appellant cannot respond. So we have offered certainly arguments on the merits of collateral estoppel, and we think it's proper on that basis that once the appellee continues to keep it alive and the district court did not base its holding on waiver, then it's still been kept a live issue. So we submit that it's live. And going back briefly also to the Barton Doctrine, I also wanted to mention that not only did the appellee brief that argument, they not only argued against arguments that the appellants did make in the district court on the motion to dismiss, they sought out the arguments that were made with respect to the motion to remand on Barton and addressed those so that appellees fully had their opportunity to address every issue with respect to Barton. There was no waiver at all. And this Court's case has readily established that waiver does not apply under these circumstances. Mr. Kreider continues to argue, appellees that is, continue to argue collateral estoppel. They cite, for example, this Court's statement that there was no malice in instituting the receivership. Well, for the reasons I mentioned earlier, that can't serve as collateral estoppel. But even if it could, that effort to use collateral estoppel in that way misconceives the scope of this case. This case is not limited to just the establishment of the receivership. As I mentioned a moment ago, there are extensive allegations about mismanagement of the LLCs themselves with respect to not paying renewal fees, letting domain name lapse, not properly defending trademark disputes. So there are numerous more allegations that go beyond just the wrongfulness in getting the receivership established. I did also want to briefly mention Southmark, which is a case they rely on in their collateral estoppel. If you look at Southmark, what happened there was a kind of similar situation. Southmark sued a court-appointed examiner, but did so on a disgorgement proceeding. And so this court expressly noted that there was extensive discovery in that case and a hearing and briefing. And so under those circumstances, the case was fully and fairly litigated. And so, yes, probably collateral estoppel should attach there and probably would attach in this case if the fee orders had been treated similarly. But for the reasons we chronicle in our briefs, that didn't happen here. There was no full and fair opportunity to litigate these issues previously. And we would ask that Mr. Barron and his entities be given their day in court. And thank you. All right. Thank you, Mr. Von Runt. Mr. Carter, thank you for your briefing and your argument.